**Elio MANARIN, Plaintiff,**

v.

**The FAIRBANKS COMPANY,**
**Defendant.**

**No. 88 C 1586.**

United States District Court,
N.D. Illinois, E.D.

Aug. 30, 1988.

**514**

Mark W. Damisch, Barclay, Damisch & Sinson, Ltd., Chicago, Ill., for plaintiff.

John N. Dore and John J. Fitzgerald, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

This is a products liability case centering around an allegedly defective dolly manufactured by defendant and sold to plaintiff's employer, Commercial Light Co. ("Commercial"). Commercial, which originally was a third-party defendant, is no longer in the case. The case is presently before the Court on plaintiff's motion for sanctions based on defendant's failure to produce a document in a timely manner. Plaintiff and defendant have each submitted to the Count two legal memoranda, attaching numerous exhibits. For the reasons discussed below, plaintiff's motion is granted.

Although the essential dispute between the parties is the seemingly simple one of whether defendant in fact produced to plaintiff a copy of a 1981 catalog, the question is made complex by the procedural history of the case. Unfortunately, the parties' briefs have served to obfuscate rather than clarify the issues.

The case was originally brought in Illinois state court on January 28, 1984. On December 21, 1984, plaintiff served a request for production of documents which sought, *inter alia,* "A listing of any and all publications or advertisements of Defendant on radio, television, newspapers or handbills, describing or showing dollies referred to in the complaint." Defendant responded that it had no information regarding this request. On January 23, 1985, plaintiff served a second request for production which included the same request. Defendant again responded that it had no such information.

On July 24, 1985, plaintiff served yet another document request, this one seeking "A listing of any and all publications or advertisements of Defendant on radio, television, newspapers or handvills [sic], describing or showing dollies referred to in the complaint and/or identified during the course of discovery." On November 22, 1985, pursuant to plaintiff's motion to compel, defendant was ordered to produce responsive documents within 28 days.

On April 17, 1986, pursuant to another motion to compel, defendant was ordered to answer all outstanding discovery within

21 days or file a statement that no further responsive documents exist. Defendant was also assessed sanctions of $200, an award which the court later vacated. Plaintiff claims that the award was vacated because defendant filed a response stating that it either had no documents or had already produced them. Defendant claims that the award was vacated because plaintiff never properly noticed the motion for hearing or served a copy on defendant.

At that time, plaintiff states that defendant had produced only two catalogs—a Hand Truck catalog identified as number T–83, and a Casters and Wheels catalog identified as number C–84. (The numbers apparently indicate that the catalogs were produced in 1983 and 1984, respectively.) These catalogs did not include any references to standards applicable to the manufacture or design of dollies.

On May 7, 1986, plaintiff took the deposition of Everett Brumbelow, defendant's vice-president. The deposition notice requested that Mr. Brumbelow bring with him a wide variety of documents, including a listing of all publications or advertisements relating to the dolly, and all standards relating to the design of the dolly. During the deposition, plaintiff's counsel listed the catalogs which he had received from the defendant. The list did not include any catalogs dated prior to 1983, except for a 1929 catalog. Mr. Brumbelow said that he knew of no other documents. He also stated that he did not check with the sales department (which was responsible for producing the catalogs) to determine whether any other catalogs existed, because he was already aware of all catalogs which were distributed.

On July 24, 1986, in response to an interrogatory requesting that defendant "Identify all manuals, catalogs, advertising, and other literature generated by The Fairbanks Company relating to the T–1114 dolly," defendant responded, "A copy of the Fairbanks catalogs relating to the T–1114 dolly have already been provided to the parties."

On August 21, 1986, because of Mr. Brumbelow's statements that he had not checked with anyone else regarding the existence of other catalogs, plaintiff served yet another document request seeking "Fairbanks Casters & Wheels Catalogs in effect from 1979 through 1983" and "Fairbanks Dolly Catalogs in effect from 1979 until 1983."

On November 10, 1986, during further deposition testimony by Mr. Brumbelow, Commercial's attorney asked whether Mr. Brumbelow knew of any other catalogs. The witness responded that all catalogs had been produced. The attorney then asked specifically whether Mr. Brumbelow knew of any catalogs relating to the T–1114 dolly other than the 1983 and 1929 catalogs. The witness stated that he could not remember, and he recognized the possibility that there might be some other catalogs around somewhere.

On February 6, 1987, defendant responded to plaintiff's outstanding document request by again producing a copy of catalog T–83. On February 10, plaintiff's counsel wrote to defendant's counsel, stating that the only catalog he had received did not apply to the year of the accident (1982). He again requested copies of catalogs in effect from 1979 through 1983. On May 4, 1987, Mr. Brumbelow submitted an affidavit stating that all available responsive documents had been produced.

In early 1988, plaintiff's claim against a non-diverse co-defendant was dismissed, and defendant removed the case to the District Court. During April and June, 1988, defendant took the deposition of plaintiff's expert witness. Defendant's counsel asked plaintiff's expert questions about the T–83 and C–84 catalogs but did not ask questions concerning any other catalogs. During approximately the same time period, plaintiff served another document request, seeking "Copies of all reports, statements, interviews, inspections, consultations, advertisements, brochures, pamphlets, instructions, tests and/or standards regarding the subject dolly or any other dolly manufactured by THE FAIR-BANKS COMPANY which you have discovered since April 30, 1986." Defendant responded that he had "no separate doc-

'uments or publications pertaining to these categories. Further information will be disclosed in connection with the review and evaluation to be conducted by Mr. Jerry Leyden [defendant's expert witness]."

On June 13, 1988, plaintiff again deposed Mr. Brumbelow. Mr. Brumbelow stated that he had no documents other than those which had already been produced. The following day, plaintiff deposed defendant's expert witness, Jerry Leyden. During that deposition, Mr. Leyden made reference to two 1981 catalogs—a hand truck catalog, number T–81, and a casters and wheels catalog, number C–81. At that point, plaintiff's attorney pointed out that he had never received these two catalogs, and defendant's attorney made no attempt to dispute that statement. This occurred only two days before the discovery cut-off date of June 16, 1988.

■ The most important issue raised in this motion is whether defendant had previously produced the 1981 catalogs to plaintiff. Defendant claims that the catalogs had previously been provided, relying on an affidavit of defendant's attorney which states, "To my knowledge, I have previously supplied copies of each of Fairbanks' Company's catalogues to counsel for the plaintiff, including the 1981 catalogue." Defendant does not provide any details, however, concerning when and how the catalog was produced. The only specific allegation by defendant is that it has the "distinct impression" that it gave the documents to Commercial while Commercial was still involved in the case, and that Commercial had then given the documents to plaintiff. Again, defendant provides no details of such a production. Defendant also states that the catalogs were referred to during the deposition of another employee of Commercial Light Company in April 1987. However, the transcript submitted by defendant contains only vague references to a document which is not specifically identified as a 1981 catalog. Furthermore, even an April 1987 production would probably have been untimely, and defendant should not have relied on another party to transmit defendant's discovery to plaintiff.

Based on the evidence before it and the inferences which may be drawn from that evidence, the Court finds that defendant did not produce the 1981 catalogs to plaintiff in a timely fashion. This failure constituted a clear violation of defendant's discovery obligations, especially considering the number of times which plaintiff had requested these documents and the number of times which defendant had been ordered to produce them.

The parties also dispute the extent of any prejudice which has resulted to plaintiff's case. The plaintiff states that one of the 1981 catalogs includes a reference to standards of the Caster and Floor Truck Manufacturers Association, and that this was the first time plaintiff learned of such standards. As a result, plaintiff claims he must either name a new expert or subject his current expert to cross-examination concerning his lack of knowledge of industry standards. However, the expert's initial lack of knowledge of applicable industry standards cannot be attributed entirely to defendant's conduct, and cross-examination concerning this lack of knowledge may well be appropriate.

Plaintiff also states that defendant's conduct deprived him of the ability to depose defendant's experts concerning the standards referred to in the 1981 catalog. This concern is legitimate, and plaintiff is entitled to a remedy for that injury. Although the Court will not take the drastic measure, sought by plaintiff, of barring defendant's experts from testifying at trial, the Court finds that plaintiff is entitled to recover for additional expenses incurred due to defendant's conduct.

■ Finally, defendant spends considerable effort attempting to explain why it believes plaintiff's case to be meritless. Most charitably, defendant's arguments may be interpreted as asserting that defendant's conduct did not prejudice plaintiff's case because plaintiff's case was already weak. The perceived weakness of an opponent's case, however, does not relieve a party of its discovery obligations.

Although plaintiff styles his motion as one based on Fed.R.Civ.P. 11, the appropriate grounds for sanctions for failure to participate in discovery and failure to obey discovery orders are Rules 26(g) and 37(b).[1] Rule 26(g) provides that an attorney or party's signature on a discovery request, response or objection constitutes a certification that the signer has read the request, response or objection and that to the best of the signor's knowledge, information and belief formed after a reasonable inquiry, the document is consistent with the Federal Rules of Civil Procedure, warranted by existing law or a good faith argument for modification thereof, not interposed for any improper purpose, and not unreasonably burdensome or expensive. Rule 26(g) further provides that where a certification is made in violation of the rule, the court shall impose an appropriate sanction. Rule 26(g) thus parallels Rule 11, but unlike Rule 11 it applies specifically to discovery requests and responses. The standard for determining whether a reasonable inquiry has been made is an objective one similar to that imposed by Rule 11. *See* Fed.R. Civ.P. 26(g) Advisory Committee Notes. The type of sanction to be imposed "is a matter of judicial discretion to be exercised in light of the particular circumstances." *Id.*

Rule 37(b) applies where a party "fails to obey an order to provide or permit discovery." It provides for a variety of types of sanctions, including the taking of designated facts to be established for the purposes of the action; preclusion of argument or evidence concerning designated claims or defenses; the striking of pleadings; entry of a dismissal or default judgment; or an award of expenses. Rule 37(b) also recognizes the discretion of the court to formulate such other appropriate sanctions "as are just." Such sanctions "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citations omitted).

With these principles in mind, the Court orders defendant to pay to plaintiff two hundred fifty dollars to compensate plaintiff for the necessity of bringing this motion. Defendant is further ordered to reimburse plaintiff for the reasonable cost of re-deposing Mr. Brumbelow and Mr. Leyden on the subject of the 1981 catalogs and the standards referred to therein. The discovery cut-off date will be extended for forty-five days beyond the date of this order to allow plaintiff to take these depositions.

---

1. Although Rule 11 does not apply to discovery requests and responses themselves, it does apply to statements in other pleadings which are contradicted by discovery material which has wrongfully been withheld. *See National Association of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 548 n. 4 (N.D.Cal.1987).