**Jules LUSARDI, et al., Plaintiffs,**

v.

**XEROX CORPORATION, a New York corporation, Defendant.**

Civ. A. No. 83–809.

United States District Court, D. New Jersey.

Oct. 21, 1988.

John F. Geaney, Steven J. Adler, Cole, Geaney, Yamner & Byrne, Paterson, N.J., Robert L. Deitz, Perkins Coie, Washington, D.C., Robert H. Jaffe, Lorraine E. Stanley, Jaffe & Schlesinger, Springfield, N.J., Alan S. Weitz, Hilary Harp, Ginsburg, Feldman and Bress, Washington, D.C., for plaintiffs, Jules Lusardi, et al.

Robert J. Del Tufo, Hannoch Weisman, Roseland, N.J., Fred A. Freund, Kaye, Scholer, Fierman, Hays & Handler, New York City, Peter W. Marshall, Gen. Counsel, Alfred H. Hoddinott, Jr., Asst. Gen. Counsel, Xerox Corp., Stamford, Conn., for defendant Xerox Corp.

OPINION

LECHNER, District Judge.

On September 6, 1988 I received from the Third Circuit a copy of an opinion, order and writ of mandamus in connection

with the petition for writ of mandamus filed in the above-captioned matter, a case involving the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). The writ of mandamus required and directed that I

> [1] vacate the holding [in my opinion] on the necessity of timely administrative filings of charges of age discriminations by the persons ... held ... not [to] constitute a proper opt-in class; [2] ... reconsider the order decertifying the class on the basis of disparate defenses without relying on the presence, or absence, of individual administrative charges, or their timing; and [3] if [I], nevertheless, conclude[ ] class decertification is required, ... modify the proposed notice to the persons who opted-in to the putative class in conformity with [the] opinion [of the Circuit] by eliminating the last sentence of paragraph 3 of said December 16, 1987 order and conforming the date in paragraph 4 for expiration of the stay or tolling of the statute of limitations on the opt-in's individual claims to a date at least thirty days after the order correcting the notice.

*See* Writ at pp. 2–3; slip op. at 39–40.

Although counsel for the class informally spoke with my deputy clerk about the possibility of submitting additional material in either written or oral form, no such submissions or indeed request for leave to offer such submissions has been received. I purposely delayed reconsideration pursuant to the order and direction of the Circuit in light of counsel's comment to my deputy clerk. No such submissions have been filed. Indeed, such submissions are not necessary for my reconsideration, as ordered and directed by the Circuit.

For the reasons which are set forth below, I conclude class decertification is required; accordingly, the modification of the proposed notice and the order are to be drafted and submitted by counsel for Xerox Corporation within five business days of the date of this Letter–Opinion.

*Discussion*

The Circuit held that my decision, with one exception, did not present them with a clear error of law. *Lusardi v. Lechner,* 855 F.2d 1062, 1064 (3d Cir.1988) (the "Mandamus Opinion"). That one exception concerned section IV, F of my opinion, "ADEA Filing Requirements." This portion of my opinion comprises barely two pages in print, *Lusardi v. Xerox,* 118 F.R.D. 351, 376–78 (D.N.J.1987) (the "Decertification Opinion"), and was not a key element in the reasoning which led to the conclusion that the class must be decertified. The issue was included in the Decertification Opinion to allow for review by the Circuit. Because of the attention given to this portion of the Decertification Opinion by the Circuit, I shall address the divergence of the Mandamus Opinion with the Decertification Opinion before reconsidering the decertification of the class.

*ADEA Filing Requirements*

Initially, I point out that I agree with the statement made by Judge Hutchinson that "it makes little sense to permit the opt-in class action to be started by a few and later joined by many if individual requirements of exhaustion of remedies can defeat the individual claims of those who opt-in, but have not individually met administrative filing requirements." Mandamus Opinion, 855 F.3d at 1078. The Circuit noted:

> The district court found that it "presently appears" none of the four originally named plaintiffs' EEOC charges were filed on behalf of "others similarly situated." App. at 688. Lusardi's EEOC charge alleged:
>
>> Xerox has engaged and is continuing to engage in employment practices related to hiring, training, promotion and termination of past, present and future employees which discriminate against persons such as myself over forty as a class particularly with respect to the implementation of a reduction in salaried work force.

*Lusardi II,* 118 F.R.D. at 378. Although the EEOC charge does not use the words "similarly situated" or allege specifically that a class action is going to be brought, we fail to see how Xerox could claim prejudice by the bringing of a class ac-

tion. The charge clearly notifies Xerox that it allegedly discriminates against persons over forty years old as a class. Accordingly, the charge provides sufficient notice to the parties to encourage meaningful conciliation, the purpose of requiring it. *See Bean v. Crocker Nat'l Bank,* 600 F.2d [754] at 760 [9th Cir. (1979)]. So long as class issues are alleged, a timely charge may serve as the basis for a class action.

Mandamus Opinion at 855 F.2d at 1078.

The divergence between the Mandamus Opinion and the Decertification Opinion results from what I perceived to be a lack of notification in Lusardi's EEOC charge of an intention to sue on behalf of anyone other than himself.[1] Accordingly, I found the notice inadequate because of the absence of expression of an intent to proceed on behalf of anyone other than the claimant. *See, e.g., Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981) (notice inadequate because complainant expressed no intention to sue on behalf of anyone other than himself); *Mistretta v. Sandia Corp.,* 639 F.2d 588, 593–94 (10th Cir.1980) (charges alleging employer's "arbitrary action constitutes age discrimination against workers over forty" *and* notice to agencies that suit was intended to be class action gave agencies opportunity to investigate and act within statute of limitations); *Bean v. Crocker Nat'l Bank,* 600 F.2d 754, 760 (9th Cir.1979) (notice filed on behalf of named plaintiffs and others similarly situated placed secretary and employer on notice that "discrimination charges encompassed a pattern of unlawful conduct transcending an isolated individual claim and that they should act accordingly").

In this case, the Third Circuit stated for the first time that: "So long as *class issues* are alleged, a timely charge may serve as the basis for a class action." *Lusardi,* at 1078 (emphasis added). This new holding will serve as guidance for the future. Nevertheless, the interpretation of the ade-

1. This comment is equally applicable to the other three named plaintiffs referred to in the

quacy of the notice is an error in the interpretation of a fact.

*Reconsideration of Decertification*

In reconsidering the entire matter without reliance upon the relatively minor portion of the Decertification Opinion which the Circuit has overruled, I am satisfied this case cannot continue in a class action status. As I note in the Decertification Opinion, the opt-in plaintiffs present what amounts to a series of more than thirteen hundred individual cases. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Xerox organization. The opt-in plaintiffs performed different jobs at different geographic locations and were subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisiors made on a decentralized employee-by-employee basis. This case should not continue in a class status.

The Circuit raised the possibility of subclasses to solve the similarly situated problem. This solution is no more workable than one class for the entire case. The Decertification Opinion details the disparate facts concerning only sixty-four of the more than thirteen hundred plaintiffs. 118 F.R.D. at 357–58. By way of example only "without regard to departmental differences, members of the sample group were employed by seventeen different Xerox groups or organizations in thirty-four cities or towns in sixteen different states." *Id.* at 357. As further explained:

These figures may be broken down even further. For example, of the sixty-four employees described in Appendix A [to the Decertification Opinion], seven were employed by OPD. These seven were scattered across six different geographic locations and had five different supervisors.

*Id.* n. 16 at 357.

In addition, there was no single company wide reduction in force ("RIF").

Decertification Opinion, 118 F.R.D. at 378.

The described downsizing of the Xerox work force was implemented and managed at the local level. The local management assessed its particular work force needs, consistent with corporate policy. Accordingly, a reduction differed not only from [Xerox] organization to organization but also from manager to manager, as well as from RIF to RIF. It appears there was never a corporate-wide VRIF or IRIF. However, "there were at least 40 separate IRIF's and more than 25 separate VRIF's during the class period conducted at various times by particular Xerox organizations."

*Id.* at 356 (citation omitted).

The above cited facts are not meant to be an exhaustive statement for declining what may be read as an invitation by the Circuit to possibly certify the class by way of many sub-classes. The reasons why sub-classes are not appropriate are virtually the same reasons why class certification is inappropriate. The simiarly situated component is not present. There is no commonality among the people who were subject to more than sixty-five separate reductions in force, virtually all of which occurred at separate points in time. In the absence of one corporate wide reduction in force, about all that the members of the proposed class have in common is their termination and age within the protected range. The disparate individual defenses asserted by Xerox heightens the individuality of the claims and complicates the significant management problems.

In addition to the absence of similarly situated plaintiffs, the manageability problems presented are very significant. For example, this is a situation not too dissimilar to that in *In Re School Asbestos Litigation,* 789 F.2d 996 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 *cert. denied,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), a case cited by the Circuit concerning manageability. In the *School Asbestos Litigation,* the district judge certified a nationwide mandatory class for punitive damages and an opt-out class for compensatory damages. In that case the Circuit stated: "As we see it, at the present stage, manageability is a seri-

ous concern." *Id.* at 1011. Nevertheless, the class status was permitted in difference to the decision of the trial judge.

In the *Lusardi* matter, not only is there significant case management concern, but, as well, the likelihood that the individualized defenses of Xerox and indeed employment situations for each of the more than thirteen hundred plaintiffs will not only detract from any asserted commonality of the questions as viewed from the standpoint of the class members but, in point of fact, destroy any possible commonality.

The attention which must be paid to the Xerox defenses has been addressed in the Decertification Opinion. 118 F.R.D. at 358–70. A recent decision of this Circuit underscores the job of the trial courts in handling an ADEA matter. Courts are confronted "with the task of interpreting the ADEA in a manner that effectuates Congress's intent to prescribe discrimination against older persons because of age, and [in a manner that] also provides reasonable latitude to employers in the management of their businesses." *Coventry v. U.S. Steel,* 856 F.2d 514, 515 (3d Cir.1988).

Although the *Coventry* decision concerned only a release of an individual's claims under the ADEA, one of the many defenses raised by Xerox, it is instructional on how carefully at least one of (and probably all of) the Xerox defenses must be considered at trial. Judge Higginbotham noted that "there has been general consensus that the private settlement of claims is not inconsistent with the ADEA." Judge Higginbotham also noted that up to the *Coventry* decision, this Circuit had yet to address the issue. *Id.,* at 517. In *Coventry,* the court did address it and held that "*subject to a close evaluation* of various factors that are indicia of 'knowing' and 'willful' waiver, employees may execute valid waivers of their ADEA claims." *Id.,* at 518 (emphasis added).

The waiver issue was addressed in the Decertification Opinion. 118 F.R.D. at 369–70. In this one instance, the obvious question is presented as to how a "close evaluation of factors that are indicia of

'knowing' and 'willful' waiver" for each claim for which the waiver defense[2] is asserted in a class action can occur on an efficient, cost effective basis where proof with regard to these matters would vary widely from one class member to another.

Manageability of a jury trial in which there would be more than 1300 separate trials would not be possible. Even assuming only two defense witnesses for each of the 1321 plaintiffs there would be a total of 3963 witnesses. At only one half trial day per witness for direct and cross examination, the total trial would consume more than 1980 trial days; giving each witness only one third of a trial day for direct and cross examination, more than 1320 trial days would be consumed. Moreover, it is not unrealistic to assume that many of the witnesses would take much more than one-third to one-half of a trial day to present each plaintiff's case or the defense which is unique to each of the plaintiffs. Simply put, this case is not suitable for class treatment.

---

**2.** The same concerns are applicable for the other defenses which have been raised.