**Kimberly A. ENGLAND, et al**

v.

**NEW CENTURY FINANCIAL CORPORATION, et al**

**Michael Klas, et al**

v.

**New Century Financial Corporation, et al**

**Nos. CIV.A.03–360–B–M1, CIV.A.04–216–B–M1.**

United States District Court, M.D. Louisiana.

April 26, 2005.

---

Gregory J. Miller, Baton Rouge, LA, Patrick Wayne Pendley, Stanley P. Baudin, Christopher L. Coffin, Plaquemine, LA, for Kimberly A. England, et al.

Ellis B. Murov, Ambrose V. McCall, Meredith Elizabeth Moore, New Orleans, LA, for New Century Financial Corporation, et al.

Donald Harold Nichols, Nichols, Kaster & Anderson, Minneapolis, MN, pro se.

Andrew J. Voss, Littler Mendelson, Minneapolis, MN, pro se.

## *RULING*

POLOZOLA, Chief Judge.

This matter is before the Court on the New Century Defendants' Motion to Reject Conditional Certification of a Collective Action.[1] Plaintiffs have opposed this motion.[2] On March 31, 2005, the Court

---

1. Rec. Doc. No. 66.

2. Rec. Doc. No. 80.

granted the defendants' motion. The Court now sets forth its reasons for granting defendants' motion.

## I. Factual Background

Two suits were filed by employees of the New Century Financial Corporation, New Century Mortgage Corporation, Worth Funding, Incorporated, and The Anyloan Company (hereinafter referred to as "New Century" or "defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"),[3] as will be set forth in more detail later in this opinion. The *England* suit was filed in a Louisiana state court and removed to federal court. Thereafter, the *Klas* suit was filed in the District Court of Minnesota. Plaintiffs seek to file this action as a collective action and contend that 485 plaintiffs have filed consent forms to join in this action seeking overtime compensation for which they were not paid. Plaintiffs allege that they are all loan officers who performed the same job, under the same job title, job duties, compensation plan, policies, procedures and performance standards. Further, plaintiffs offer 232 declarations submitted by various plaintiffs, 198 of which declare that managers at 70 of the 80 defendants' branch offices nationwide instructed them not to record their overtime hours. Plaintiffs contend this evidence is sufficient to satisfy the "lenient 'similarly situated' standard."[4] As will be noted in more detail later in this opinion, at no time did the plaintiffs file a formal motion to certify this action as a collective action. As a result, the defendants have filed a motion to reject conditional certification of a collective action.

In support of their motion, the defendants note that this action involves loan officers who work under different branch managers in approximately 80 branches located in 30 different states. Defendants also contend that in order for plaintiffs to successfully prove that this case is appropriate for collective class treatment, plaintiffs must submit evidence of a centralized and company-wide practice with respect to the approval and documentation of overtime. The defendants further argue that "off-the-clock" allegations are "inherently local in nature and, thus, not susceptible to being handled as a nationwide class."[5] Defendants also emphasize that plaintiffs' counsel contemplates taking 200–400 discovery depositions, and argue that, "[a]ny action requiring over 400 depositions is inappropriate for class treatment."[6]

## II. Procedural Background

The Court believes it is important to set forth the complicated procedural background of this case. The *England* action was originally filed in the 19th Judicial District Court for East Baton Rouge Parish, Louisiana, in April of 2003. Defendants timely removed *England* to the United States District Court for the Middle District of Louisiana in May of 2003. On June 10, 2003, the *Klas* action was filed in the United States District Court for the District of Minnesota. Thereafter, the plaintiffs in *England* filed a motion to dismiss the Louisiana suit in order to join the action in Minnesota. This Court denied the motion based on the "first to file" rule.[7]

---

**3.** 29 U.S.C. § 201, *et seq.*

**4.** Plaintiffs' Memorandum in Opposition to Defendants' Motion to Reject Conditional Class Certification, Rec. Doc. No. 80, p. 2.

**5.** Memorandum in Support of the New Century Defendants' Motion to Reject Conditional Certification of a Collective Action, Rec. Doc. No. 67, p. 9.

**6.** *Id.,* at p. 10.

**7.** Rec. Doc. No. 14.

The *Klas* action was then transferred to this Court and consolidated with the *England* case.[8]

Before the *Klas* action was transferred from Minnesota and consolidated with *England*, the *Klas* plaintiff filed a "Motion for Judicial Notice" seeking the Minnesota district court's approval of plaintiff's proposed "Notice of Lawsuit." It is this motion that plaintiffs' counsel now argues should be treated as a motion for conditional certification.[9] Plaintiffs' counsel admits in his February 23, 2005, letter to the Court that the plaintiffs have never brought a *formal motion* seeking conditional certification of a collective action.[10] The record supports this concession by plaintiffs' counsel.

The defendants contend that plaintiffs have attempted to engage in discovery which should only be available if the conditional certification had been granted. The defendants also argue that plaintiffs purposely failed to file a motion for conditional certification to circumvent the Case Management Order which required that such a motion be filed by April 2, 2004. Thus, to bring this issue to a conclusion, the New Century defendants filed a "Motion to Reject Conditional Certification of a Collective Action." As noted earlier, the Court has granted this motion in a separate order issued by the Court.

## III. Law & Analysis

### A. Conditional Certification of a Collective Action

■■ To certify a collective action under the Fair Labor Standards Act, two requirements must be met. First, the named representatives and the putative members of the prospective FLSA class must be similarly situated.[11] Second, the pending action must have a general effect. A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.[12]

In the seminal case *Mooney v. Aramco Services Co.*,[13] the United States Court of Appeals for the Fifth Circuit noted the two different tests which have been applied to determine if the claims are "similarly situated." This two-step approach was set forth in *Lusardi v. Xerox Corp.*[14] and the "Spurious Class Action" outlined in *Shushan v. University of Colorado.*[15] These two cases will be discussed and analyzed in more detail because of their importance to the Court's decision.

### B. The *Lusardi* Approach to "Similarly Situated"

■■ Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class of other employees.[16] Similarly situated does not necessarily mean identically situated.[17] Rather, an

---

8. Rec. Doc. No. 19.

9. *See* Letter, Rec. Doc. No. 104.

10. Rec. Doc. No. 104. (Emphasis added).

11. *Donohue v. Francis Services, Inc.*, 2004 WL 1161366 (E.D.La. May 24, 2004), *citing Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, *1 (E.D.La.1992).

12. *Id.*, at *1, *citing Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo.1987).

13. 54 F.3d 1207 (5th Cir.1995) (*reversed on other grounds* ).

14. 122 F.R.D. 463, 465–66 (D.N.J.1988).

15. 132 F.R.D. 263 (D.Colo.1990).

16. *Id.*, at *5, *citing Pfohl v. Farmers Ins. Group*, 2004 WL 554834 (C.D. Cal. March 1, 2004), *citing White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002).

17. *Id.*, *quoting Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946 (E.D.La. April 16, 1992) (*citing Heagney v. European American Bank*, 122 F.R.D. 515 (E.D.Wash.1989); *Palmer v. Readers Digest Association*, 1986 WL 11458, 42 Fair Empl. Prac. 212, 213

FLSA collective action determination is appropriate when there is "a demonstrated similarity among the individual situations ... **some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].**" [18] The district court for the Eastern District of Louisiana noted as follows:

> This standard has been restated and further refined in *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399 (E.D.Tex. 1999):
>
> > [A]lthough the standard for satisfying the first step is lenient, ... the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." [C]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted... [19]

Another district court has concluded "that while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." [20]

## C. Applicable Jurisprudence

In *Basco v. Wal–Mart Stores, Inc.*,[21] the Eastern District of Louisiana succinctly explained the *Lusardi* and *Shushan* cases as follows:

> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification of a representative class." If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated, the district court decertified the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.[22]

---

(S.D.N.Y.1986); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 617 (S.D.Tex.1979)).

**18.** *Id.,quoting Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946, at *2 (*quoting Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo.1987))(Emphasis added).

**19.** *Id.*

**20.** *Id., quoting Barron v. Henry County School System*, 242 F.Supp.2d 1096 (M.D.Ala.2003)(*citing Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D.Or.2002)).

**21.** 2004 WL 1497709 (E.D.La. July 2, 2004).

**22.** *Id.*, at *3, *quoting Mooney*, 54 F.3d at 1213–14.

The Eastern District of Louisiana utilized the *Lusardi* approach because it found that the *Lusardi* approach has been "embraced" more often in the Fifth Circuit than the "Spurious Class Action" found in *Shushan*. This Court agrees and will apply *Lusardi* to the facts of this case.

In *Basco*, the plaintiffs alleged that Wal–Mart pursued a pattern of conduct which caused employees to work off the clock, be "locked in" at night off the clock while waiting for management to let them out, and missing rest and meal breaks. The plaintiffs sought a court order certifying this case as a collective action under § 216(b) of the FLSA. The court recognized that plaintiffs' claims varied, and that not each plaintiff complained of "illegal" activities.[23]

Based on the foregoing facts, the *Basco* court utilized the approach set forth in *Lusardi* and stated the following: [24]

[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter. At least one court has proceeded directly to the second stage when "the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." [25] Indeed, in the instant matter substantial discovery has occurred; the Court has heard the video deposition testimony of a substantial number of plaintiffs at the hearing on this matter and has independently reviewed written deposition testimony as well. This case, as demonstrated by its long procedural history, is not in a nascent stages.

Thus, an application of the second criteria is called for.[26]

As to the first prong of the two-part *Lusardi* test, the court ruled in favor of Wal–Mart, and stated as follows:

Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal–Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason, the Court would deny the Motion to Certify Collective Action. However, pretermitting that finding, the Court will now examine this matter using the more demanding second step.

Turning to the second step in the analysis, the court stated that it would "examine whether there are (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to Wal–Mart which appear to be indi-

**23.** *Id.,* at *3.

**24.** In determining whether the plaintiffs were "similarly situated," the court discussed whether there were facts or a legal nexus that bound the parties so as to create judicial efficiency.

**25.** *Id.,* at *4, *quoting Pfohl v. Farmers Ins. Group,* 2004 WL 554834 (C.D.Cal. March 1, 2004).

**26.** *Id.,* at *4.

vidual to each plaintiff; and (3) fairness and procedural considerations that would make certification improper." [27] The court further noted that, " '[i]t **would be a waste of the Court's and the litigants' time and resources** to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.' " [28]

Finding in favor of Wal–Mart on the second step of the analysis, the court explained as follows:

> The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store locate[d] in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, on manager in one department would react to the "policy" differently than in another department...
>
> Furthermore, Wal–Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate.

.      .      .      .      .

These factors also support the finding that a collective action of this nature **presents enormous manageability problems** because there is no single decision, policy or plan at issue. The findings decertifying the collective action in *Lusardi* are equally appropriate here. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal–Mart organization. The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence brought before the court.[29]

In *Freeman v. Wal–Mart Stores, Inc.,*[30] an employee filed an FLSA claiming he was improperly labeled as a "salaried employee" to avoid the payment of overtime compensation. The plaintiff sought to proceed as a collective action.

Finding that the plaintiff failed to provide evidence that members of the proposed class were similarly situated, the court stated that, "[p]laintiff's view seems to be that all salaried Wal–Mart employees below officer level are similarly situated no matter what the nature of their duties: the employees are similarly situated simply because they claim violations of the law by the same employer." [31]

27. *Id.*

28. *Id., quoting Freeman v. Wal–Mart Stores, Inc.,* 256 F.Supp.2d 941 (W.D.Ark.2003)(Emphasis added).

29. *Id.,* at *7–8. (Emphasis added).

30. 256 F.Supp.2d 941 (W.D.Ark.2003).

31. *Id.,* at 945. The court also noted that under FLSA cases, "disputes regarding the nature of an employee's duties are questions of fact." The court determined that "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective

**D. The Plaintiffs have not met the "similarly situated" standard; thus, conditional certification of a collective action is not appropriate under the law and facts of this case.**

▓ Under *Mooney, Lusardi,* and the jurisprudence discussed above, the Court finds that plaintiffs in this case have not met their burden of showing that they are "similarly situated." It is clear that this case involves a multitude of different managers at different geographical locations across the country. It is also clear that individual inquiries must predominate in this case because of the different locations, managers, and factual situations involved at each location. Otherwise, there is no explanation for the need to conduct between 200 and 400 discovery depositions as plaintiffs' counsel has estimated. The Court also finds that if liability is found at one location, this would not necessarily require this Court to also find liability at another location. If liability is found, damages would necessarily require a case-by-case inquiry, thereby rendering it impossible to try this case as a collective class.

▓ It is also important to emphasize that plaintiffs have failed to provide sufficient evidence of a nationwide illegal policy involving the alleged claims. Plaintiffs have submitted affidavits of some of the plaintiffs. The Court finds that this evidence is insufficient to establish the existence of a nationwide illegal policy as required under the law. In fact, this evidence supports the Court's conclusion that these alleged claims are based on local policies of various managers located at different sites. There is simply no evidence of a national policy

that would support a collective action under the facts of this case.

These claims should be tried as individual cases because each has unique facts based on local conditions in different localities. For these reasons, the Court finds the claims are not similarly situated and do not involve a general nationwide rule, regulation or custom. Therefore, the Court finds these cases cannot be treated as a collective action.

Because of the unusual procedural aspects of these cases in that the two suits were originally filed in separate courts and had different pretrial orders issued, the plaintiffs are concerned that many of the plaintiffs' claims will now be time barred.[32] The Court believes that it should take appropriate steps to protect the rights of individual plaintiffs who have relied on the orders that have been issued earlier in these proceedings so each will not be prejudiced. This equitable relief, however, must also ensure that the defendant's rights are also protected because of the Court's decision which has found that this case should not proceed as a collective action.

The Court shall withhold entry of final judgment granting the New Century Defendants' motion to give each individual plaintiff who wishes to proceed with an individual claim to file a suit in this district within 30 days. The Court will then transfer these individual cases to the appropriate district court pursuant to 28 U.S.C. § 1406 and § 1631. The transferee court can decide whether to consolidate these cases or parts thereof. The Court believes this action will protect the claims of those plaintiffs who sought to join in the proposed collective action. However, any

action because the class members are not similarly situated."

32. Plaintiffs' Summary of Argument in Opposition to Defendant's Motion to Reject Conditional Certification of a Collective Action, p. 8, Rec. Doc. No. 100.

claim not timely filed within the 30 day period will be time barred.

## IV. Conclusion

The Court finds that the New Century Defendants' Motion to Reject Conditional Certification of a Collective Action is GRANTED.

IT IS FURTHER ORDERED that those plaintiffs who wish to file an individual claim must file a suit in this district within 30 days from the date of this opinion. Any such suit not filed within the 30 day time period shall be time barred. This Court shall transfer such actions which are timely filed to the appropriate district pursuant to 28 U.S.C. §§ 1406 and 1631.