Eric CRUZ, Plaintiff,

v.

CONOCOPHILLIPS, et al, Defendants.

CIVIL ACTION NO. 4:15–CV–02573

United States District Court, S.D. Texas, Houston Division.

Signed 09/23/2016

---

13. *Portillo–Aguirre,* 311 F.3d at 652.

14. U.S. Const. art. VI.

Alexander M. Baggio, Michele R. Fisher, Paul Joseph Lukas, Nichols Kaster, PLLP, Minneapolis, MN, for Plaintiff.

Shana Johnson Clark, Norton Rose Fulbright LLP, Houston, TX, for Defendant.

## ORDER

The Honorable Alfred H. Bennett, United States District Judge

Before the Court is Plaintiff's Motion for Conditional Certification and Court–Authorized Notice (Doc. # 26), Defendants' Response (Doc. # 32), and Plaintiff's Supplement to its Motion for Conditional Certification (Doc. # 41). Having considered counsels' arguments and the applicable law, the Court grants Plaintiff's Motion for Conditional Certification.

## I. Background

Plaintiff Eric Cruz ("Plaintiff") alleges that he worked for Defendants Conoco-Phillips and ConocoPhillips Company (collectively "Defendants") as a Project Lead between August 2012 and March 2014. In addition to Plaintiff, to date, over 16 Project Leads have indicated their intention to opt-in as plaintiffs ("Opt-in Plaintiffs") through consent filings with the Court. Doc. # 26 Ex. A. Plaintiff alleges that Defendants expected Plaintiff and Opt-in Plaintiffs to work at least twelve-hour days, oftentimes seven days per week. Doc. # 26 at 4. Though the long hours, Plaintiff states that he and other Project Leads were compensated on a day rate basis, paying them a flat· sum for every day worked regardless of the number of hours worked in the day or workweek. *Id.* at 5. Accordingly, Plaintiff alleges that this policy—to pay Project Leads a day rate, regardless of how many hours they worked—violates the Fair Labor Standards Act ("FLSA") overtime requirement in 29 U.S.C. § 207(a)(1) as to him, and all other Project Leads paid under the same

alleged policy. *Id.* at 1. Based off of these allegations, Plaintiff filed this motion to conditionally certify a FLSA collective class of "[a]ll Project Leads and those similarly situated who worked for Defendants and were paid a day rate at any time since three years prior to the filing of this Complaint." *Id.* at 5.

## II. Legal Standards

 Under § 207(a) of the FLSA, covered employers are required to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C.A. § 207(a). Section 216(b) of the FLSA establishes an opt-in collective action against employers who violate § 207. 29 U.S.C.A. § 216(b). Unlike the Rule 23 class action, plaintiffs must affirmatively notify the court of their intention to become parties by opting-in to the action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995) *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). However, notice to potential plaintiffs does not issue unless a court conditionally certifies the case as a collective action. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F.Supp.2d 807, 809 (S.D.Tex.2003). Courts recognize two methods for determining whether to authorize notice to similarly situated employees: the two-step *Lusardi* approach and the class-action based *Shushan* approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo. 1990). Though the Fifth Circuit has not yet determined which method is more appropriate, most courts, including district courts in this circuit, use the *Lusardi* approach rather than the Rule 23 requirements. *See, e.g., Maynor v. Dow Chemical,*

671 F.Supp.2d 902, 930–31 (S.D.Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F.Supp.2d 759, 762 (N.D.Ill.2004) (stating that most courts have used or implicitly approved the two-step method); *Mooney*, 54 F.3d at 1217 (declining to mandate either theory). Accordingly, this Court believes that it is appropriate to apply the *Lusardi* approach in this case.

 The first *Lusardi* step is to decide whether to issue notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The court's decision at this stage is often based only on the pleadings and any affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *Id.* at 1214. A plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *Aguirre v. SBC Commc'ns, Inc.*, No. 05–3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006); *see also Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 861 (S.D. Tex. 2012).

 A factual basis for "substantial allegations" that potential class members were "together the victims of a single decision, policy, or plan" is needed to satisfy the first step. *Mooney*, 54 F.3d at 1213–14 (citing *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988)); *See also Hall v. Burk*, No. 3:01–CV2487H, 2002 WL 413901, at *3 (N.D.Tex. Mar.11, 2002) (stating that "[u]nsupported assertions of widespread violations are not suffi-

cient to meet Plaintiff's burden"). There must be a showing of identifiable facts or legal nexus that bind the claims so that hearing them together promotes judicial efficiency. *Corcione v. Methodist Hosp.*, No. CIV.A. G–14–160, 2014 WL 6388039, at *3 (S.D. Tex. Nov. 14, 2014). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D.La.2005); *see also Barron v. Henry Cnty. Sch. Sys.*, 242 F.Supp.2d 1096, 1104 (M.D.Ala.2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

■■■ If a court conditionally certifies, the case proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second of *Lusardi's* two analytical steps typically occurs when discovery is largely complete and the defendant moves to decertify the class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court factually determines whether the employees are similarly situated. *Mooney*, 54 F.3d at 1214. If so, the collective action proceeds. *See id.*; *Basco v. Wal–Mart Stores, Inc.*, No. 00–cv–3184, 2004 WL 1497709, at *3 (E.D.La. July 2, 2004). If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F.Supp.2d at 508. Neither the first nor second stage is an opportunity for the court to decide the merits by deciding factual disputes or making credibility determinations. *Corcione*, 2014 WL 6388039, at *3.

## III. Analysis

■■■ Utilizing the *Lusardi* analysis, the Court concludes that the record is sufficient to meet the showing required at this first, conditional certification, stage. The Defense asserts several arguments that are more appropriately addressed at the second stage of the *Lusardi* analysis, after the parties have had a chance to do fact discovery on the issues. Accordingly, as explained in further detail below, the Court finds that the Plaintiff's allegations are enough to meet its unheavy burden of showing (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.

### A. Reasonable Basis for Crediting Assertions that Aggrieved Individuals Exist

■■■ The Plaintiff has met his burden of showing that there is a reasonable basis for assuming that other individuals exist. Plaintiff has submitted declarations from six Project Leads stating they performed similar duties, worked similar hours, and were compensated under the same plan as the Plaintiff in this case. Doc. # 26 Ex. C. Further, 16 Project Leads have indicated they want to opt-in to this lawsuit through consent filings with the Court. Doc. # 26 Ex. A. Together, this is sufficient to demonstrate a reasonable basis for crediting Plaintiff's assertion that other aggrieved individuals exist. *See, e.g., Jones v. Cretic Energy Servs., LLC*, 149 F.Supp.3d 761, 769 (S.D. Tex. 2015) (holding three declarations and nine opt-ins sufficient to meet this element); *Heeg*, 907 F.Supp.2d at 862 (finding element satisfied with two affidavits from opt in plaintiffs plus acknowledg-

ment that at least eighteen individuals held the position).

## B. Aggrieved Individuals Are Similarly Situated to Plaintiff in Relevant Respects Given the Claims and Defenses Asserted.

██ This element requires the Plaintiff to show that class members were victims of a single decision, policy, or plan. *Mooney*, 54 F.3d at 1213–14. Here, the Plaintiff alleges that all Project Leads, including himself, were paid under the same policy— paying Project Leads a day rate, regardless of how many hours they worked—in violation of the FLSA overtime requirement in 29 U.S.C. § 207. This policy creates the legal and factual nexus needed to establish these claims are similar enough that judicial efficiency will be accomplished by hearing the claims together. *Corcione*, 2014 WL 6388039, at *3. As such, under the fairly lenient standard at the notice stage, the Plaintiff, who worked for the Defendants as a Project Lead, has established that he is similarly situated to other Project Leads subject to the same compensation scheme.

Defendants' argue that the Plaintiffs are not similarly situated because duties and skills among Project Leads vary extensively between four distinct disciplines: Pipeline, Subsurface, Facilities, and Instrumentation & Electrical ("I & E"). Doc. # 32 at 5–8. However, Defendants' never point to any difference that would undermine the judicial efficiency gained by certifying a class of Project Leads across all four disciplines. Though Project Leads in Pipeline, Subsurface, Facilities, and I&E may oversee different types of projects, they are each still the person responsible for planning, organizing, and executing Defendants' oil and gas related projects. Doc. # 25 at 3. Further, certain responsibilities transcend the differences between the disciplines: these responsibilities include promoting safety on project sites, ensuring project materials and labor were available, and overseeing project cost and progress. *Id.* Lastly, the evidence suggests that all Project Leads, regardless of discipline, were compensated under the same day rate policy.[1] Accordingly, the fact that a Project Lead's duties may vary slightly between each of the four disciplines does not defeat the low bar of conditional certification.

██ Additionally, Defendants argue that the Plaintiff cannot establish that he and other aggrieved individuals are similarly situated because their independent contractor defense is fact intensive and individualistic in nature.[2] However, Courts in this district have typically declined to perform this analysis at the notice stage, acknowledging that assessing an employer-employee relationship is a merit-based de-

---

1. The Court acknowledges that Defendants urge that some Project Leads may have, and others may not have, been paid a day rate depending on several factors. However, under the class definition, only those Project Leads subject to this policy would be able to opt-in to the action. Further, the Plaintiff has presented enough evidence to indicate that the payment of a day rate to Project Leads was a widespread policy and practice by the Defendants, and no evidence presented by the Defendants has challenged this view.

2. Determination of whether a worker qualifies as an employee for purposes of the FLSA requires the application of the "economic realities" test, which focuses on five-factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

termination and at odds with the preliminary nature of conditional certification. *In re Wells Fargo Wage & Hour Emp. Prac. Litig.* (No. III), 2012 WL 3308880, at *28 (S.D.Tex. Aug. 10, 2012) (noting that courts within the "Southern District of Texas...have determined that exemptions are merit-based and not relevant at the notice stage"); *Walker v. Honghua Am., LLC,* 870 F.Supp.2d 462, 471 (S.D. Tex. 2012) ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification."). On the other hand, some courts within this district have recently began to clarify that their refusal to apply the economic realities test at this stage of the proceeding does not mean its application is irrelevant to the determination of whether the class is similarly situated. *Christianson v. Newpark Drilling Fluids, Inc.* No. H–14–3235, 2015 WL 1268259, at *4 (S.D. Tex. Mar. 19, 2015). Instead, courts have begun viewing the similarly situated requirement through the lens of the economic realities test. *See id.*

That being said, clarification of what is appropriate in regards to the independent contractor defense during conditional certification is not required in this case because under either approach the Plaintiff has met his burden. Even if the Court were to adopt the new trend, the Plaintiff has sufficiently presented arguments relevant to the economic realities analysis applicable to both Plaintiff and Opt-in Plaintiffs across all four Project Lead disciplines. These arguments include, but are not limited to, (1) that Defendants had—and exercised the ability to—hire and fire Plaintiff and Opt-in Plaintiffs; (2) Defendants disciplined Plaintiff and Opt-in Plaintiffs; (3) Defendants supervised and controlled Plaintiff and Opt-in Plaintiffs' work by directing them on which work to perform, how to perform it, and when to perform it; (4) Defendants provided Plaintiff and Opt-in Plaintiffs equipment, such as hard hats with Defendants' name and logo on them, as well as gas monitors; (5) Defendants provided Plaintiff and Opt-in Plaintiffs with their own company email addresses and laptops to use in performing their work for Defendants; (6) Defendants required Plaintiff and Opt-in Plaintiffs to attend monthly safety meeting at Defendants' offices; (7) Plaintiff and Opt-in Plaintiffs had no opportunity to create their own opportunities for profit and loss; and (8) Plaintiff and Opt-in Plaintiffs do not operate their own independent enterprises or maintain business sites separate from Defendants. Doc. # 26 at 4. Accordingly, at this early stage, the Plaintiff has met his burden of proving there are enough similarities running throughout the entire proposed class, even when viewing the analysis through the lens of the economic realities test, to establish that the Plaintiff is similarly situated to the potential Opt-in Plaintiffs. Further, any potential issues presented by the economic realities test will be highlighted through discovery, and will be more appropriately addressed in the second stage of the *Lusardi* analysis.[3]

---

3. Additionally, Defendants assert that if the Plaintiff and Opt-in Plaintiffs are determined not to be independent contractors, the Court will still have to determine if the White Collar Exemptions to the FLSA overtime requirements apply. (Doc. # 32 at 15–16). In Response, Plaintiff asserts that the Defendants will be unable to prove any exemption because its compensation of the Plaintiff and Opt-in Plaintiff fails the salary basis test, something required under all of the applicable exemptions. (Doc. # 26 at 9). Though this is a merit issue, it shows that the answer may very well be decided on a class-wide basis. Accordingly, as with the independent contractor defense, it does not destroy the Plaintiff's showing that he is similarly situated to the potential Opt-in Plaintiffs.

As far as Plaintiff's class definition including Project Leads "and those similarly situated," the Court's conditional certification of the proposed class requires clarification that "similarly situated" is deemed to only cover individuals that worked as the person in charge of a project site and received a day rate, regardless of their classification or job title. This extension of the class definition will not be deemed to grant the Plaintiff the ability to expand the class definition beyond persons in charge of planning, organizing, and executing Defendants' oil and gas related projects that were compensated under the same scheme as the Plaintiff and other Opt-in Plaintiffs.

## C. Individuals want to Opt-in to the Lawsuit

Many courts have determined that plaintiffs do not need to present evidence that potential plaintiffs desire to opt-in. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011) ("Plaintiff's failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion."); *Villarreal v. St. Luke's Episcopal Hospital*, 751 F.Supp.2d 902, 915 (S.D.Tex.2010) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit."). Other courts require a showing that at least a few individuals want to join. *Simmons v. T–Mobile*, No. H–06–1820, 2007 WL 210008, at *9 (S.D.Tex. Jan. 24, 2007) ("The Court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit."). If such a requirement does exist, Plaintiff has amply met it, as the litigation has already attracted over twenty potential Opt-in Plaintiffs. Accordingly, the Plaintiff has met all of his initial burdens, and conditional certification is appropriate.

## D. Notice and Request for Data about Potential Class Members

The Court requires Defendants to produce, in usable electronic format, within fourteen days of the date of the Order: the names, last known personal and work addresses, personal and work email addresses, and dates of work of all persons who performed work for Defendant as Project Leads, or similar positions, from three years prior to the filing of this suit until the date of this order. The information should be verified as complete and accurate by one of the Defendants' corporate representatives. Finally, the Court orders the parties to confer about the content of the notice, and to provide the Court with a proposed notice within twenty-one days of the date of this Order. Additionally, the parties should confer about the proper method for distribution and return of the notices. If the parties cannot agree upon either of these issues, they must each file their proposed notice and proposed method of distribution and return.

## IV. Conclusion

For the reasons discussed above, Plaintiff's Motion is GRANTED. The Court conditionally certifies the following class: "All Project Leads and those similarly situated who worked for Defendants and were paid a day rate at any time since three years prior to the filing of this Complaint." Accordingly, Defendants' Motion for Protective Order seeking postponement of depositions until after the Court's ruling on this motion for conditional certification (Doc. # 43) is moot.

IT IS SO ORDERED.