Kristina JONES & Kim Marrs, Individually and on behalf of others similarly situated, Plaintiffs,

v.

CASEY'S GENERAL STORES, Defendant.

No. 4:07–CV–400.

United States District Court, S.D. Iowa, Central Division.

Sept. 27, 2007.

Jeffrey D Hanslick, Blackwell Sanders Peper Martin LLP, Kimberly A. Jones, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Nathan John Overberg, Ahlers & Cooney PC, Edward W Remsburg, Ahlers & Cooney PC, Amanda G Wachuta, Ahlers & Cooney PC, Des Moines, for Casey's General Stores, Inc., Defendant.

Jonathan W Cuneo, Jon A. Tostrud, R. Brent Walton, Matthew Wiener, Cuneo Gilbert & Laduca LLP, Washington, DC, J Barton Goplerud, Hudson Mallaney & Shindler PC, West Des Moines, Jon E Heisterkamp, Peters Law Firm PC, Scott H Peters, Peters Law Firm PC, Council Bluffs, Ryan F. Stephan, Stephan Zouras, LLP, Chicago, II, James B. Zouras, Stephan Zouras, LLP, Chicago, IL, Jonathan W Cuneo, Cuneo Gilbert & Laduca LLP, Washington, DC, J Barton Goplerud, Hudson Mallaney & Shindler PC, West Des Moines, IA, Jon E Heisterkamp, Scott H Peters, Peters Law Firm PC, Council Bluffs, IA, Ryan F. Stephan, Stephan Zouras, LLP, Chicago, IL, for Kristina Jones, Kim Marrs Individually and on behalf of others similarly situated, Plaintiffs.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendant's Objections to Magistrate's Ruling Denying Protective Order Precluding Contact by Plaintiffs with Potential Opt-in Plaintiffs, filed September 6, 2007. Clerk's No. 70. Plaintiffs filed a resistance to the motion on September 10, 2007 (Clerk's No. 80), and Defendant replied on September 12, 2007 (Clerk's No. 84). A hearing was held on

the matter on September 14, 2007. The matter is fully submitted.

## I. FACTUAL BACKGROUND

Plaintiffs filed the present action in the United States District Court for the Northern District of Iowa on May 30, 2007. *See* Clerk's No. 64–3. In their Complaint, Plaintiffs assert that Defendant failed to properly pay overtime compensation to its assistant managers, as required by the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. Specifically, Plaintiffs, on behalf of themselves and on behalf of a class of persons "similarly situated," allege that "Defendant failed to accurately record the actual hours worked by its assistant managers. Rather, Defendant required its assistant managers to sign off on pre-approved schedules regardless of the hours they actually worked." Compl. ¶ 26.

Casey's denies failing to properly pay assistant managers overtime compensation, but claims that after being served with notice of the present lawsuit, its attorneys initiated a thorough review of actual pay practices in the field. Def.'s Mot. at ¶ 6.[1] Casey's attorneys spoke to numerous employees who are or were assistant managers, and found that there were widely varying experiences and practices with respect to whether assistant managers received work-related telephone calls during their off-duty hours and whether time spent taking such calls was properly recorded and compensated. Casey's claims that it decided to compensate impacted employees for such time, even though Casey's does not believe that it was encompassed in Plaintiffs' Complaint. To facilitate its internal review, on July 19, 2007, Casey's sent a questionnaire to all persons who worked as an assistant manager in the previous two years. Casey's claims the questionnaire did not mention the present lawsuit in any way and did not condition payment on any release or waiver of the FLSA rights asserted in Plaintiffs' lawsuit.

Upon learning of the questionnaire, Plaintiffs filed a Motion for a Protective Order, seeking, amongst other things, to have Casey's enjoined "from processing any responses to the Questionnaires" and "prohibiting Casey's General Store's Inc., its counsel and agents from contacting assistant managers about the subject matter of this litigation without notice to Plaintiffs' counsel and with opportunity for Plaintiffs' counsel to be present." Northern District of Iowa Chief Magistrate Judge Paul Zoss entered an order on Plaintiffs' request for a protective order on July 31, 2007. Judge Zoss' order permitted Casey's to receive and process any responses to the questionnaires, but required Casey's to provide a copy of all such responses to counsel for Plaintiffs. Judge Zoss also enjoined Casey's from further ex parte contact with any putative plaintiffs concerning issues in this lawsuit, without first obtaining either an agreement from Plaintiffs' counsel or court permission. Clerk's No. 64–12. Judge Zoss later amended the protective order, finding that it did not apply to prohibit Casey's from communicating with its current Assistant Managers, including those in the process of separating from employment, "on an individual basis, for purposes of discussing, addressing, or redressing individual concerns or issues involved in this litigation, so long as the defendant does not seek to obtain releases related to any

---

1. The Court notes that Defendant did not comply with Local Rule 7.1(d), which provides that a brief must be filed as a separate document: "A brief must be filed as an electronic attachment to the motion it supports under the same docket entry as the motion." Counsel is reminded of the importance of complying with the Local Rules.

claim covered by this litigation." Clerk's No. 64–18.

On August 20, 2007, Casey's asked the Court to issue a protective order precluding Plaintiffs and their counsel from initiating contact with potential opt-in plaintiffs. Casey's claimed, in essence, that it would be fundamentally unfair for Plaintiffs and their counsel to be permitted to have one-sided, unsupervised contact with putative opt-in plaintiffs when Defendant could not, particularly in light of the fact that Casey's turned over responses, including contact information, from over 1400 questionnaires, as required by the Court's order. On September 4, 2007, Judge Zoss denied Casey's requested protective order, stating:

> [T]he court does not see any potential for abuse or unfairness in these circumstances. Under the amended protective order, the defendant is permitted to have contact with its current Assistant Managers, including those in the process of separating from employment, on an individual basis for purposes of discussing, addressing, or redressing individual concerns or issues involved in this litigation, so long as the defendant does not seek to obtain releases related to any claim covered by this litigation. The defendant already has had contact with its former Assistant Managers in the form of the questionnaire.
>
> The plaintiffs and their lawyers are not restricted in their contacts with putative class members because, by filing this action as a class action, the plaintiffs and their counsel have assumed responsibility for representing the putative class.

Clerk's No. 64–24 at 2.

On the same date that Judge Zoss denied Casey's request for a protective order, Judge Mark Bennett entered an order transferring the case from the Northern District of Iowa to the Southern District of Iowa, pursuant to 28 U.S.C. § 1404(a). Clerk's No. 64–59. Two days later, Casey's filed the present motion, requesting that the Court find Judge Zoss' September 4, 2007 order denying its request for a protective order to be clearly erroneous and contrary to law, pursuant to Federal Rule of Civil Procedure 72.

## II. LAW AND ANALYSIS

A non-dispositive magistrate order may only be reversed if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(a); Fed.R.Civ.P. 72(a). Defendant argues that Judge Zoss' order denying its request for a protective order is erroneous because Plaintiffs' counsel have not "assumed responsibility for representing" anyone other than those persons that have opted into the plaintiff collective.

Title 29 U.S.C § 216(b) provides that an action against an employer for violation of the FLSA may "be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The statute further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

■ "Collective actions under the [FLSA] are a unique species of group litigation. Unlike other employment-discrimination class suits under Title VII or the Americans with Disabilities Act that are governed by Rule 23, actions on behalf of individuals claiming that employers violated the FLSA are brought as 'collective actions' under the statute." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proce-*

*dure* § 1807 (2007). The requirement that potential plaintiffs "opt-in" to the collective action is the primary feature distinguishing collective actions under the FLSA from class actions that are subject to Federal Rule of Civil Procedure 23. Indeed, Rule 23 requires putative class members to opt *out* if they do not wish to be bound by the outcome of the class action. *See* Fed.R.Civ.P. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances . . . that the court will exclude from the class any member who requests exclusion. . . .").

 In class action lawsuits, "[b]eyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed." *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir.1995). Defendants argue that the requirement that plaintiffs opt-in to the lawsuit differentiates this case from class action lawsuits in general, such that Plaintiffs' counsel cannot be deemed to represent any putative collective member until such time as those persons opt-in to the litigation. While no case law appears to deal with precisely this issue, the Court is inclined to agree with Defendant. The reasoning for finding that counsel owes a fiduciary duty to putative class members even prior to class certification was well summarized in an unpublished disposition from the Southern District of New York:

> [P]re-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation. These duties arise because class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to

class certification. In electing to put themselves forward as class counsel, they assume the duty of not harming those rights.

*Schick v. Berg*, No. 03–5513, 2004 WL 856298, at *6 (S.D.N.Y. Apr.20, 2004). More specifically, actions taken by class counsel that are detrimental to putative class members may well end up binding such persons if they ultimately fail to opt out of the litigation pursuant to Rule 23. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 379, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (finding that litigants who did not opt out of class action suit were bound by the judgment); *In re General Am. Life Ins. Co. Sales Practices*, 357 F.3d 800, 804 (8th Cir.2004) (same); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir.2001) ("In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out."). In a collective action, such as the case at bar, however, Congress has specifically provided that the only persons bound by the action are those who overtly opt-in to the litigation. If for some reason, a putative plaintiff believed that counsel had acted adversely to his or her interests prior to certification, that person's rights could be equally protected by declining to opt-in to the litigation and instead pursuing an individual suit. *See, e.g., Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir.1975) (" 'There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on

the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent.'") (quoting and adopting the position of the Fifth Circuit in *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288–89 (5th Cir. 1975)); *Edwards v. City of Long Beach,* 467 F.Supp.2d 986, 989 (C.D.Cal.2006) ("If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action."); *Ballaris v. Wacker Silttronic Corp.,* No. 00–1627–KI, 2001 WL 1335809, at *1 (D.Or. Aug.24, 2001) ("If employees do not opt[-]in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action.") (citing *EEOC v. Pan Am. Work Airways, Inc.,* 897 F.2d 1499, 1508 n. 11 (9th Cir.1990)).

▪ Given that the reasoning for finding that class counsel owe a fiduciary duty to putative class members prior to class certification is inapplicable in the context of "opt-in" collective actions, the Court concludes that Plaintiffs' counsel have not "assumed responsibility for representing the putative [collective members]." Accordingly, Judge Zoss' order is clearly erroneous in that regard. With this fundamental distinction in the relationship between putative collective members and counsel clarified, the Court now turns to an evaluation of whether Plaintiffs' counsel's contact with putative collective members warrants the issuance of a protective order.

▪ Contrary to Plaintiffs' assertion that "Casey's has not provided any evidence-or even an unverified allegation-that

any improper solicitation has occurred," Pls.' Br. at 6, Casey's has presented evidence warranting a concern that Plaintiffs' counsel's unsupervised contact with putative collective members may have crossed the line into improper solicitation. Specifically, Casey's has proffered an affidavit by Julia Jackowski, the Vice President of Human Resources for Casey's, stating that at least one Casey's store manager [2] has reported that a representative for Plaintiffs "directly solicited the employee to join this lawsuit." Clerk's No. 84–2 at 10. Jackowski also reported that another store manager was asked about Casey's compliance with its policies, and that at least one assistant manager was left a message which stated it was in regard to the survey Casey's sent out "in response to the lawsuit" filed by Plaintiffs. *Id.* at 10–11. Melanie Gebel, a store manager of the Sioux City, Iowa Casey's store, also filed an affidavit stating that she was contacted by a representative of Plaintiffs on September 8, 2007. Clerk's No. 84–2 at 12. Ms. Gebel reports that the representative claimed that Casey's questionnaires indicated that 86% of assistant store managers were not paid correctly and the representative "said she was interested in knowing if I wanted to join the lawsuit." *Id.* Finally, Defendant has proffered the affidavit of Linda Gooch, a Casey's store manager in Lebanon, Missouri.[3] Ms. Gooch states that a woman representing Plaintiffs contacted her on September 8, 2007, told her that over 7000 assistant managers responded to Casey's questionnaire, and asked her if she wanted to join the lawsuit against Casey's. Clerk's No. 94–2. Ms. Gooch states that the woman told her she would send a consent form to her and not

---

**2.** Notably, Casey's store managers, as opposed to Casey's assistant store managers, are not claimed to be impacted by the present litigation.

**3.** Defendant's Motion for Leave to File an Additional Affidavit in Support of its Rule 72 Objections (Clerk's No. 94) is GRANTED.

to tell anyone at Casey's about the phone call or the form. *Id.* These sworn affidavits contradict Plaintiffs' claims that they were only contacting questionnaire respondents to "ask them about Casey's unilateral ex parte communication." Pls.' Br. at 6.

■ The Supreme Court has recognized that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). This same duty was found applicable to collective actions in *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). In *Hoffmann–La Roche,* the Court emphasized that the benefits of the collective form of litigation "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." 493 U.S. at 170, 110 S.Ct. 482. Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court. Thus, pre-certification, ex parte notice of the pendency of the present litigation carries with it the inherent risk of prejudice and allegations of impropriety, such as the improper solicitation claimed in the present case.

Iowa Rule of Professional Conduct 32:7.8(c) provides: "If success in asserting rights or defenses of a client in litigation in the nature of a class action is dependent upon the joinder of others, a lawyer may accept, but shall not seek, employment from those contacted for the purpose of obtaining their joinder." *See also* L.R. 83.2(g)(1) ("The Iowa Rules of Professional Conduct, or any successor code adopted by the Iowa Supreme Court, govern all members of the bar of [the Southern District of Iowa]."). Given the affidavits filed by the Defendant regarding Plaintiffs' contact with putative collective members, and the fact that Plaintiffs' counsel has not assumed any ethical obligations to such persons, the Court believes that the protective order requested by Defendant is warranted. The Court is mindful that "an order limiting communications between parties and potential [collective] members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.,* 452 U.S. at 102, 101 S.Ct. 2193. However, given the record now before it, the Court concludes that there is specific evidence that Plaintiffs' ex parte communications with the putative collective members either have crossed, or are at substantial risk of crossing, ethical rules against solicitation. The Court further finds that any prejudice or impact on Plaintiffs' rights as a result of the protective order to be entered will be minimal in light of the fact that the Court will be resolving the matter of conditional certification shortly. Any prejudice is further minimized by the fact that Plaintiffs are not barred from communicating with putative opt-in collective members who themselves initiate contact.

Accordingly, the Court finds that Judge Zoss' order denying the protective order was clearly erroneous to the extent that it concluded that Plaintiffs' counsel were communicating with putative collective members in a fiduciary capacity. This error, coupled with the new evidence proffered by Defendant indicating inappropriate communications, warrants the entry of a protective order. Accordingly, Defendant's Objections to the Magistrate's Ruling (Clerk's No. 70) are sustained to the extent articulated *supra.* Plaintiffs and

their lawyers are hereby prohibited from initiating any contact with potential opt-in plaintiffs without first obtaining an agreement to do so from opposing counsel or permission of the Court.

## III. SUPPLEMENTAL RULING

█ As the Court prepared to file this Order, Defendant filed a document entitled "Motion for Additional Relief with Respect to its Rule 72 Objections Currently under Advisement before Judge Pratt." Clerk's No. 105. Therein, Defendant claims to have recently discovered that Plaintiffs are now calling putative opt-in collective members and referring them to a class action website, which appears at http://www.caseysovertimelawsuit.com. Defendant requests that the Court order Plaintiffs to immediately remove any information related to this lawsuit from the referenced website, and from any other websites that may contain such information.[4]

The Court has visited the Plaintiffs' website and, quite frankly, is dismayed at some of the information contained therein, particularly in light of the fact that the website appears to have been put up only shortly after the Court's hearing on Defendant's motion and while the matter of Plaintiffs' communications with putative collective members was under advisement. First, the Heading of the website states: "CASEY'S GENERAL STORE OVER-TIME Class Action Lawsuit." http://www.caseysovertimelawsuit.com. As has been made clear throughout this Order, the present action is *not* a class action lawsuit, but a collective action under the FLSA. Next, the main page of the website states:

Plaintiffs allege that they and other similarly-situated assistant managers worked unpaid overtime off-the-clock for

CGS performing some of the following duties:

* Talking on the phone with CGS employees while away from the store;

* Arriving at work early to prepare for their shift;

* Working without paid meal and rest breaks;

* Traveling to competing gas stations on a daily basis to compare prices;

* Ensuring that store towels, mop heads and other laundry were cleaned off-site;

* Covering missed shifts of other CGS employees when they failed to report to work;

* Working past their scheduled shifts to clean, order items, do paperwork and otherwise assist other store employees; and,

* Covering for the store manager during her/his absence from the store and/or unavailability to handle store matters.

*Id.* In fact, the Complaint filed in this action does not specifically identify the listed activities as being the basis for the present lawsuit. Indeed, the Complaint quite generally states that "Defendant failed to accurately record the actual hours worked by its assistant managers. Rather, Defendant required its assistant managers to sign off on pre-approved schedules regardless of the hours they actually worked," without further detail. Compl. ¶ 26. Importantly, Defendant has denied Plaintiffs' allegations. *See* Answer to Compl. ¶ 26 (Clerk's No. 64–10).

The website further states that the goals of this "class action" are to "prohibit CGS from failing or refusing to pay overtime

---

4. While Plaintiffs have not had time to respond to the Motion, such response is not necessary, as the website speaks for itself.

wages to Assistant Managers"; to recover lost overtime wages for Assistant Mangers who were denied overtime; to require Casey's to change its time-keeping methods to accurately record actual time worked by Assistant Mangers; and to "prevent CGS from denying overtime wages in the future." http://www.caseysovertimelawsuit.com. The way in which these "goals" are stated implies that Casey's liability under the FLSA has already been proven or is uncontested. As noted, Casey's has denied Plaintiffs' allegations and, as is clear from the docket in this matter, virtually nothing in this case is uncontested.

Upon clicking on either the "Case Updates" link or the "FAQ" link on the main page of the website, the following appears:

> Chief Magistrate Judge Paul Zoss recently ordered Casey's to produce the results of a survey it sent to Assistant Managers [AM's], asking if they had taken or received phone calls at home, for which they were not paid. *Of the 1400 responses, OVER 85% of AM's indicated they did so, without pay, for as long as 10–15 hours per week.*
>
> Recently the case was transferred to Judge Robert Pratt and Magistrate Thomas Shields in U.S. District Court in Des Moines, Iowa. Plaintiffs requested that the court approve the sending of notice to all current and former AM's, providing them with accurate information regarding their right to participate in the case and pursue claims for unpaid overtime.
>
> Last week, Casey's filed a document with the Court, requesting that it be allowed to start making payments to some AM's for time they spent off the clock answering telephone calls. *Since Casey's has cheated its employees in the past, our job is to make sure that any such payments are CORRECTLY calculated,* including overtime, and to make

sure that the AM's rights to other benefits are not compromised. Accordingly, if you have any questions or information you would like to discuss, please feel free to contact us at our toll-free number, 888–840–3157, or email.

Stay tuned for updated information on this case.

http://www.caseysovertimelawsuit.com/case Updates.html (emphasis added). The Court is particularly concerned with the emphasized portions of the "update," as they give the impression that Defendant's liability is already settled, a matter which is far from undisputed. A downloadable consent form is posted on the website, along with a fax number, e-mail address, and mailing address to submit completed consent forms. There is no information informing putative opt-in collective members that they may contact counsel of their own choice, that they are not required to opt-in to this action, or that they may pursue their own action independent of the present litigation. Hence, while putative opt-in collective members are "encouraged" to contact Plaintiffs' counsel, the encouragement appears to be nothing more than a blatant attempt at solicitation.

■ This case has not yet been conditionally certified. As noted *supra,* however, this Court has relatively broad discretion in limiting communications with putative collective members when such communications cross the boundaries of propriety, including when the communications are unbalanced, misleading, or factually inaccurate. *See, e.g., Maddox v. Knowledge Learning Corp.,* 499 F.Supp.2d 1338, 1338 (N.D.Ga.2007) (ordering website that was posted prior to conditional certification modified when it contained unbalanced, misleading, and inaccurate information). Having viewed Plaintiffs' website, it seems quite clear that Plaintiffs have undertaken precisely

the type of one-sided, misleading communications with putative opt-in collective members that they claim Defendant undertook in sending out questionnaires. Indeed, Plaintiffs' conduct, if permitted to continue, could easily have the effect of tainting the entire putative class and jeopardizing this entire litigation.

While the Court believes it would be an abuse of discretion to order the entire website shut down,[5] it concludes nonetheless that the website must be substantially modified to rectify the concerns articulated herein. Plaintiffs are, accordingly, ordered to *immediately* remove the offending website information from the public domain. The Court will not dictate to Plaintiffs the precise changes to make, other than to say that any information presented on the website should present only a *factual, accurate, and balanced* outline of the proceedings to date. Plaintiffs counsel is cautioned that, in making a determination of what, if any, information to post on the internet, they should exercise great care, as further inappropriate contacts will be subject to sanctions and the possible invalidation of any consents that result from past or future inappropriate contacts with putative opt-in plaintiffs.

## IV. CONCLUSION

For the reasons stated and to the extent provided herein, Defendant's Objections to Magistrate's Ruling Denying Protective Order Precluding Contact by Plaintiffs with Potential Opt-in Plaintiffs (Clerk's No. 70) are SUSTAINED; Defendant's Motion for Leave to File Additional Affidavit (Clerk's No. 94) is GRANTED; and Defendant's Motion for Additional Relief (Clerk's No. 105) is GRANTED.

IT IS SO ORDERED.

---

5. A recent advisory decision by the Iowa State Bar Association Committee on Ethics and Practice Guidelines found that nothing in the Iowa Rules of Professional Conduct prohibited an attorney from *properly* using a website to advertise for clients who may have a claim or cause of action that could be brought as part of a class action. *See* Advisory Opinion No. 07–03 (Aug. 8, 2007). Such advertising, however, must not be "false or misleading," contain "material misrepresentations of fact or law," or "omit a fact necessary to make the statement considered as a whole not materially misleading." Iowa R. Prof. Conduct 32:7.1(a). Further, such advertising shall not contain "statements that are unverifiable," or "rely on emotional appeal." *Id.* at 32:7.1(b). Finally, any advertising should be "relevant,"

"dignified," and should be "disseminated in an *objective* and understandable fashion [that will] facilitate the prospective client's ability to make an informed *choice* about legal representation." *Id.* 32:7.1(c) (emphasis added). "Appeal should not be made to the prospective client's emotions, prejudices, or personal likes or dislikes. Care should be exercised to ensure that false hopes of success or undue expectations are not communicated. Only *unambiguous information relevant to a layperson's decision regarding legal rights or the selection of counsel, provided in ways that comport with the dignity of the profession and do not demean the administration of justice, is appropriate in public communications.*" *Id.* (emphasis added).