**Cornelius WILLIAMS, individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**GRAYCO CABLE SERVICES, INC., Grayco Communications, L.P., and Protek Communications, Inc., Defendants.**

**Civil Action No. 4:15-CV-2893**

United States District Court,
S.D. Texas, Houston Division.

Signed 05/17/2016

---

Robert R. Debes, Jr., Shellist Lazarz Slobin LLP, Houston, TX, for Plaintiff.

Gregg M. Rosenberg, Rosenberg Sprovach, Houston, TX, for Defendant.

## ORDER

VANESSA D. GILMORE, UNITED STATES DISTRICT JUDGE

Pending before the Court is Plaintiff Cornelius Williams's Motion for Conditional Certification as a Collective Action and Notice to Potential Class Members. (**Instrument No. 17**).

### I.

#### A.

Plaintiff Cornelius Williams ("Plaintiff" or "Williams") has been and is currently employed as a Cable Technician with Defendant Protek Communications, Inc. ("Protek") during the relevant statutory time period. Defendants Protek, Grayco Cable Services, Inc. ("Grayco Cable"), and Grayco Communications, L.P. ("Grayco Communications"), provide cable installation and repair services for Comcast's residential and commercial clients. (Instrument No. 1). Grayco Cable contracts with Comcast to provide installation and repair services to its clients, and Grayco Cable in turn subcontracts some of these services to Protek. (Instrument No. 1).

Plaintiff alleges that as a Cable Technician, his primary duties consist of driving to Grayco Communications' warehouse each morning to pick up equipment and a list or route of customers required for the day's work, driving to customer homes and businesses to install and repair equipment, calling customers to confirm appointments, attending weekly Tuesday meetings with Protek supervisors, attending monthly meetings with Grayco supervisors, submitting daily paperwork of completed jobs, and returning to Grayco's offices at the end of the day, and completing "close out/code out" paperwork. (Instrument No. 1 at 6). Plaintiff alleges that these same duties are performed by all cable technicians hired either by Protek or Grayco Cable. (Instruments No. 1 at 6; No. 25 at 1-3).

Plaintiff alleges that all Defendants share the same wage policies for all cable technicians. (Instrument No. 1 at 7). Defendants either issue a "wage check" for hourly earnings plus a "production check" for the specific installation services performed, or only a "production check" for the installation services performed. (Instrument No. 1 at 7). Plaintiff alleges that either method of compensation violates the FLSA because 1) the cable technicians are not paid the correct rate of overtime pay, 2) costs such as equipment use, truck use, customer chargebacks, and fuel costs are improperly deducted from the cable technician wages, and 3) Defendants failed to pay cable technicians for time spent attending meetings, picking up and dropping off supplies at the warehouse, and travel time between service appointments. (Instrument No. 1 at 7). Specifically, Plaintiff alleges that Grayco issues him a "wage check" every two weeks for some, but not all, of the hours worked in a two-week pay period. (Instrument No. 1 at 7). Additional-

ly, Plaintiff alleges that Protek issues him a bi-monthly "production check" which includes the piece rates and/or commissions Williams earned for the equipment he installed for customers. (Instrument No. 1 at 7). Plaintiff alleges that Defendants' pay practices violate the FLSA and that other cable technicians are also improperly paid under Defendants' policies. (Instrument No. 1).

## B.

On October 3, 2015, Plaintiff Williams filed suit against Defendants to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Instrument No. 1). As of May 10, 2016, five other plaintiffs, Marc Poelon, Evince Occilien, Antonio Whitten, Eric Douglas, and Rodney Fields, have filed Consent to Join Williams' collective class action lawsuit. (Instruments No. 28; No. 39). Plaintiff's FLSA action is threefold: Plaintiff alleges that Defendants failed to pay correct overtime wages, improperly deducted work time for travel time and mandatory meetings, and failed to pay cable technicians at the statutory minimum wage as a result of those deductions.

On January 13, 2016, Plaintiff filed a Motion for Conditional Certification and Notice to the Putative Class. (Instrument No. 17). On February 3, 2016, Defendants filed a Response in Opposition. (Instrument No. 21). On February 4, 2016, Plaintiff filed a Reply. (Instrument No. 25).

## C.

Plaintiff seeks conditional class certification of "all current and former cable technicians employed by the Defendants during the three (3) year period preceding the filing of this suit to the present." (Instrument No. 17). Plaintiff asserts that cable technicians all performed similar job duties and were all subject to the same company-wide pay and timekeeping policies, and are

therefore similarly situated. (Instrument No. 17).

First, Plaintiff asserts that Defendant Grayco pay the class members at the wrong overtime rate because Defendants fail to include all remuneration and commissions into the regular rate of pay. (Instrument No. 17 at 7-10). Instead, Plaintiff alleges that Defendant issues cable technicians a "wage check" every two weeks for some, but not all, of the hours worked and a bi-weekly "production check," which includes commissions and piece rates earned, from Protek. (Instrument No. 17 at 7-10). Plaintiff alleges that Defendant Protek would then deduct the amount of the wage check paid by Grayco from the production check, along with various incidental work expenses. (Instrument No. 1 at 5-6). As a result, Plaintiff alleges that cable technicians are not paid the correct overtime rate for hours worked in excess of forty in a workweek.

Second, Plaintiff alleges that Defendants fail to pay class members for all hours worked, including travel time between job sites, time spent in mandatory meetings, and time spent picking up supplies and equipment from Defendants' warehouse. (Instrument No. 17 at 8-10). Plaintiff alleges that Defendants have actual and constructive knowledge of their failure to pay for this time, which Defendants characterize as "non-sales work," even though this work is essential to Defendants' business and cable technicians could not provide the repair and installation services required without them. (Instrument No. 17 at 6-9).

Third, Plaintiff alleges that because Defendants improperly deduct cable technician wages each pay period, this results in cable technicians earning less than the statutory minimum wage. (Instrument No. 17 at 9-10). Plaintiff alleges that Defendant Protek improperly deducts the amount of the wage check paid by Grayco, along with

various incidental work expenses such as the use of Grayco's truck ($100-125/week), the cost of liability insurance for Grayco's truck ($17-20/week), damage claims, customer charge backs, and tools Grayco required the cable technicians to purchase from Grayco Cable in order to perform the work. (Instrument No. 1 at 5-6). Additionally, Plaintiff alleges that cable technicians are required to personally pay for gasoline costs incurred as part of the work, a cell phone, and other supplies they are required to have and use as part of working for Grayco. (Instrument No. 1 at 5-6). Lead Plaintiff Williams asserts that in a two-week period where he earned $620.69 from Grayco and Protek combined, his actual pay after deductions and work-related expenses was only $420.69 for working at least 80 hours, which calculates to approximately $5.26 per hour—in violation of the FLSA's mandated federal minimum wage. (Instrument No. 17 at 10).

### D.

In response, Defendants oppose conditional certification on four grounds. Defendants first argue that conditional certification is not appropriate because the named Plaintiffs are not similarly situated to potential class members. (Instrument No. 21). Specifically, Defendants dispute that all class members of cable technicians were compensated under the same single payment policy, therefore requiring a highly individualized inquiry. (Instrument No. 21). Additionally, Defendants assert that the putative class members, which consists of cable technician hired by Grayco and those hired by Grayco and Protek, are not similarly situated to Plaintiff Williams or each other because they are categorized and paid differently. (Instrument No. 21). Defendants assert that cable technicians hired by Grayco are paid an hourly rate of $7.25 plus piece-rate compensation and receive only a W2, whereas cable technicians hired by Protek receive both a W2 and a

Form 1099 as independent contractors, and are paid an hourly rate by Grayco as well as production commissions by Protek. (Instrument No. 21 at 9).

Second, Defendants assert that Grayco employees received and signed onto an official Manual in which the overtime policy was clearly stated, and time was self-reported. (Instrument No. 21 at 4-5). Defendants therefore assert that they could not have improperly deducted time from the class members' timesheets because each cable technician was responsible for self-reporting their daily hours and signing affidavits at the end of each timesheet certifying that those reported hours were complete and accurate to the best of their knowledge. (Instrument No. 21 at 7-10).

Third, Defendants assert that putative class members cannot be similarly situated because they report to multiple and different supervisors. (Instrument No. 21). Lastly, Defendants object to the putative class definition extending back three years from the present date and assert that the class should only cover a two year period, because there has been no evidence of actual or constructive knowledge of willfulness in their alleged FLSA violations. (Instrument No. 21).

### II.

The FLSA requires both that covered employers pay each employee a minimum wage set by the Act, 29 U.S.C. § 206(a), and that covered employers compensate nonexempt employees an overtime rate for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216 (b) of the FLSA provides that an employee may bring an action against their employers for violation of the hour and wage provisions, mentioned above. *See* 29 U.S.C. § 216. Section 216 further provides an aggrieved employee may bring suit against his employer on

"behalf of himself ... and other employees similarly situated. [However], no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought" 29 U.S.C. § 216(b). Section 216(b) thereby establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995); *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d 902, 914 (S.D.Tex.2010). District courts have discretion in deciding whether to order notice to potential plaintiffs. *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 800 (S.D.Tex. 2010).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo.1990). In *Mooney*, 54 F.3d at 1216, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action in at least one context, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a Rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir.2005).

Most courts use the "two-step ad hoc approach" in *Lusardi* as the preferred method for the similarly-situated analysis rather than Rule 23 requirements. *See Yaklin v. W–H Energy Servs., Inc.*, No. C–07–422, 2008 WL 1989795, at *1 (S.D.Tex. May 2, 2008) ("The prevailing analysis used by federal courts ... is the two-stage test set forth in *Lusardi*."); *Treme v. HKA Enters., Inc.*, No. 07–1134, 2008 WL 941777, at *2 (W.D.La. Apr.7, 2008) ("[A] review of the district court cases considering certification of an FLSA collective action reveals that a majority of courts in this circuit have favored the two-stage *Lusardi* approach.") (collecting cases); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) ("[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23.").

The first stage of the *Lusardi* analysis is the "notice stage," in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213–14. "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213–14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan." *Id.* at 1214. At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases to-

gether promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D.La.2005); *see also Barron*, 242 F.Supp.2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. Notice does not issue unless the court conditionally certifies the case as a collective action. *See Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1086 (S.D.Iowa 2007). The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See Mooney*, 54 F.3d at 1214; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Villatoro*, 286 F.Supp.2d at 810. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F.Supp.2d at 508.

### III.

### A.

In determining whether notice is appropriate, the Court must determine whether there are other employees "who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Clarke*, 370 F.Supp.2d at 605 (quoting *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). "Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.* (quoting *Crain v. Helmerich and Payne Int'l Drilling Co.*, Civil Action No. 92–0043, 1992 WL 91946, at *2, 1992 U.S. Dist. LEXIS 5367, *4–5 (E.D.La. April 16, 1992)).

This standard has been restated and further refined in *H&R Block v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999):

[A]lthough the standard for satisfying the first step is lenient ... the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted ....

Notwithstanding the lenient standard for issuing notice, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) that those individuals want to opt in to the lawsuit. *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H–

07–2349, 2007 WL 4146714, at *4 (S.D.Tex. Nov. 19, 2007) (citations omitted). Before authorizing notice, courts typically require plaintiffs to provide some factual support for the allegations of class-wide discrimination. *Id.* Where substantial discovery has taken place prior to conditional certification, numerous courts in the Fifth Circuit have held that plaintiffs may be required to satisfy a higher evidentiary standard than that articulated in *Lusardi. See Nieddu v. Lifetime Fitness, Inc.,* 977 F.Supp.2d 686, 692 (S.D.Tex.2013). Courts have not established the precise quantity of evidence required in such cases, but typically, plaintiffs must rely on something more than his or her own allegations and declarations. *Id.* Evidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated. *Bernal v. Vankar Enters., Inc.,* No. SA–07–CA–695–XR, 2008 WL 791963, at *4 (W.D.Tex. Mar. 24, 2008); *Bursell v. Tommy's Seafood Steakhouse,* No. H–06–0386, 2006 WL 3227334, at *1 (N.D.Tex. Nov. 3, 2006); *Clarke,* 370 F.Supp.2d at 606.

In this case, as to the first prong, the parties' briefing disputed whether Defendants' pay practices violate the FLSA. Plaintiff asserted that cable technicians were not paid proper overtime rates as required by the FLSA because Defendants improperly deducted commissions and remunerations from the regular rate. (Instrument No. 17). Defendants' filed Response did not address the merits of the FLSA claim and instead asserted that no basis for conditional certification exists in this case because the putative class members were not all victims of a single decision, policy, or plan which violated the law. *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (5th Cir.1995). However, at the Court's hearing on May 13, 2016, Defendants' counsel conceded on the record that Defendants' pay practices prior to October 26, 2015 did not include all remuneration

into the regular rate. Additionally, defense counsel conceded that Defendants' pay practices did not compensate cable technicians at the correct overtime rates as required under the FLSA. As such, the Court finds that there is no dispute over whether there exists a reasonable basis to credit the assertion that aggrieved individuals exist.

As to the second prong, Defendants dispute that aggrieved individuals in the putative class are similarly situated to the named Plaintiffs in relevant respects given the claims and defenses asserted. *See Prater v. Commerce Equities Mgmt. Co., Inc.,* No. H–07–2349, 2007 WL 4146714, at *4 (S.D.Tex. Nov. 19, 2007). Defendants assert that some Grayco cable technicians signed and were bound by the Grayco Policies Manual in which the overtime policy was clearly stated and complied with the FLSA. (Instrument No. 21 at 4-5). In their Response, Defendants assert that they could not have improperly deducted time from the class members' timesheets because each cable technician was responsible for self-reporting their daily hours and signing affidavits at the end of each timesheet certifying that those reported hours were complete and accurate to the best of their knowledge. (Instrument No. 21 at 7-10). Defendants also assert that putative class members cannot be similarly situated because they report to multiple and different supervisors, but offered no binding authority upon this Court to enforce such a requirement for class certification purposes under the FLSA. (Instrument No. 21 at 7-10). Defendants assert that similarly situated individuals do not exist because there is no uniform pay policy that affects both Grayco employees and Protek employees. However, during the May 13, 2016 hearing, Defendants' counsel conceded on the record that Defendants' timekeeping and pay practices

did not include all remuneration in its overtime wage calculation, and did not comply with the FLSA. Plaintiff also presented evidence at the hearing that all Grayco and Protek employees were paid under the same overall scheme, even though some were additionally categorized as independent contractors. As such, the Court finds that Plaintiff has preliminarily shown at the first *Lusardi* stage that aggrieved individuals in the putative class are similarly situated to the named plaintiffs.

Lastly, Defendants asserted that Plaintiff has not identified any individuals who want to opt-in to the lawsuit. (Instrument No. 21). However, their response on February 3, 2016 conceded that three other employees have joined the case since its inception, and the record shows that there a total of five opt-in plaintiffs as of May 10, 2016. Additionally, defendants' counsel conceded during the hearing on May 13, 2016 that they no longer challenge that there are individuals who wish to opt-in to the lawsuit. As such, Defendants' assertion as to the third prong is moot as a matter of law.

As incomplete discovery has taken place at this preliminary stage, the Court finds that there is factual support for crediting the named Plaintiff's assertions, and that there is preliminary evidence that a putative class of cable technicians was subject to a common pay policy, plan, or practice by Defendants. In pleadings as well as hearing testimony, Plaintiff has provided preliminary evidence and declarations indicating the similar job duties of cable technicians in the putative class and Defendants' pay practices in violation of the FLSA. Additionally, on the hearing on May 13, 2016, Plaintiff enumerated the extent to which Defendants and their supervisors and managers had actual or constructive knowledge of the alleged FLSA violations. Therefore, in light of the *Lusardi* certification standard at this stage, the Court conditionally certifies this class of cable technicians hired by all Defendants at any point in the past three years. *See Bernal*, 2008 WL 791963, at *4; *Nieddu*, 977 F.Supp.2d at 692. Accordingly, Plaintiff's motion for conditional certification is **GRANTED** for the putative class: "all current and former cable technicians employed by the Defendants during the three (3) year period preceding the filing of this suit to the present," and Notice shall be sent to the putative class members. (**Instrument No. 17**).

### B.

The Court next considers Plaintiffs' proposed notice to potential class members.

The Supreme Court has recognized that a trial court has a "substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann–La Roche*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Accordingly, it is well within the purview of the Court to monitor the preparation and distribution of a notice sent to putative class members, and to "ensure that it is timely, accurate, and informative." *Id.* at 172, 110 S.Ct. 482. In exercising its discretionary authority over the notice-giving process, however, "courts must be scrupulous to respect judicial neutrality ... and must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174, 110 S.Ct. 482. Courts have seen fit to modify, or even dictate, the form and content of a notice sent to putative class members. *See Solis v. Hotels.com Texas Inc.*, No. 3–03–CV–618–L, 2003 WL 22272008, at *2–4 (N.D.Tex. Oct. 1, 2003).

In this case, Defendants have not raised any objections to Plaintiff's proposed notice, aside from an overall attempt to reserve an opportunity to do so at a later

time upon the Court's granting of conditional certification. (Instrument No. 21). Defendants reiterate its objection to the class extending back three years, on the grounds that Plaintiff has not proven willfulness and constructive or actual knowledge of the alleged FLSA violations. However, as previously addressed by this Court, the Court has found sufficient evidence of Defendants' knowledge and willfulness at this *Lusardi* stage to extend the putative class size to those cable technicians employed by Defendants at any point in the last three years.

Accordingly, Plaintiff's request for notice should be **GRANTED.**

## IV.

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Conditional Certification as a Collective Action and Notice to Potential Class Members is **GRANTED** as to the following class: "all current and former cable technicians employed by the Defendants during the three (3) year period preceding the filing of this suit to the present." (**Instrument No. 17**).

The Clerk shall enter this Order and provide a copy to all parties.